IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVE QUEEN,<br>  #347-405 | * | |
| | * | |
| v. | * | Civil Action No. CCB-14-2413 |
| WARDEN OF MARYLAND<br>  CORRECTIONAL INSTITUTION -<br>  HAGERSTOWN, et al. | *<br>* | |

\*\*\*

## MEMORANDUM

Pro se plaintiff Steve Queen, a state prisoner at Maryland Correctional Institution-Hagerstown ("MCI-H"), filed the instant verified complaint alleging he was told he possessed excess property and had to mail it home at his own expense, donate it, or destroy it. He says he was deprived of property without due process because MCI-H did not offer him a predeprivation hearing. Now pending is a motion to dismiss or for summary judgment filed by defendants Officer Jenkins, a Correctional Officer at MCI-H; Scott Oakley, Executive Director of the Inmate Grievance Office ("IGO"); and Richard Dovey, MCI-H's warden.[1] Queen responded. The court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' motion, construed as a motion for summary judgment, shall be granted.

## BACKGROUND

Queen filed his complaint on July 29, 2014. In it, he alleges that on April 4, 2014, after a disciplinary hearing in which he was sentenced to 225 days of disciplinary segregation, he was advised that he had to forfeit the remainder of his "non-allowable" property as his segregation sentence exceeded 180 days. (Compl. 2, ECF No. 1.) Queen says that the issue of property

---

[1] The Clerk shall be directed to amend the docket to reflect the correct name of MCI-H's warden, Richard Dovey.

forfeiture was not discussed during the disciplinary hearing.  He maintains that pursuant to a prison directive, "Executive Directive OPS.220.0004.1," MCI-H is required to store all non-allowable property so long as it does not exceed certain space limitations, which Queen claims his property did not.  He further claims that he should have been permitted 120 days to prove ownership or appeal the decision regarding property through the administrative remedy procedure but was denied this opportunity.

The defendants filed their motion to dismiss or for summary judgment on December 15, 2014.  They say that on April 1, 2004, Queen was found guilty of violating inmate rule 122 (possession of telecommunications device) and sentenced to 225 days' disciplinary segregation. (IGO Letter 3, ECF No. 18-2.)  Pursuant to Executive Directive MCI-H ID 110-0006-1, an inmate who receives a disciplinary segregation sentence in excess of 180 days "shall have all appliances and non-allowable/excess/contraband property mailed out of the institution at the inmates' [sic] expense, donated or destroyed."  (MCI-H ID 110-0006-1 2, ECF No. 18-3.)  The following items of Queen's property were determined to be non-allowable: (1) a television, remote control, and antenna; (2) a digital converter; (3) several music CDs and video games; (4) a video game system; (5) two beard trimmers; and (6) a set of broken headphones.  (Notice of Confiscation, ECF No. 18-4.)  In accordance with MCI-H ID 110-0006-1, Queen was advised of his right to send all of his non-allowable property to his home or other residence.  On April 4, 2014, Queen designated that most of his "non-allowable" personal belongings be sent to Ann Queen in Baltimore, Maryland; marked the broken headphones to be destroyed; and donated the CDs and video games.  (*Id.*)

On April 14, 2014, and May 9, 2014, Queen filed requests for administrative relief indicating that he did not approve of the sending out of his personal property, and complaining

that he had not been given a hearing on the issue. (Requests for Administrative Remedy, ECF 18-5.) Queen's requests were dismissed and he filed a grievance with the IGO. (IGO Letter.) The IGO complaint was dismissed with a finding that it failed to state a claim upon which relief could be granted. It was further noted that Queen was not entitled to a hearing regarding the "confiscation" of his property, and that the "confiscation" was in accordance with the applicable directive, DCD 220-004,[2] as it related to a rule violation. *Id*.

In his opposition to the defendants' motion, filed on January 13, 2015, Queen reiterates his claim that his due process rights were violated in the handling of his property. He also argues that MCI-H failed to fully enforce its own directives by not providing him with a hearing and not storing his property during the administrative appeals process.

## ANALYSIS

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all

---

[2] There is some confusion in the record as to whether the number of the directive is 220.004 (as stated in the IGO Letter) or 220.0004 (as stated in the copy of the directive Queen attached to his opposition at ECF No. 24-1). The discrepancy does not appear material to the issues in this case.

reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 2003)).

Queen claims MCI-H violated his procedural due process rights by denying him a hearing before requiring him to send away, destroy, or donate his non-allowable property. His claim fails.

To begin, Queen misreads the applicable prison regulations. OPS 220.0004.05(A)(2) specifically provides that "[p]roperty in the possession of an inmate that exceeds established limits is subject to confiscation and disposition according [to] procedures for handling and disposition of inmate property." Queen's non-allowable property was, in fact, handled in accordance with the procedures described in MCI-H ID 110-0006-1. And the provision providing that property be held for 120 days prior to destruction, OPS 220.0004.05(F)(9), is limited to property deemed contraband, and Queen's property was not contraband. For the same reason, OPS 220.0004.05(G), which provides inmates the right to a hearing on forfeiture of property confiscated as contraband, is also inapplicable.

Further, the disposal of Queen's non-allowable property followed a disciplinary adjudication in which Queen pled guilty to possession of a telecommunications device, and agreed to 225 days of disciplinary segregation.[3] (Inmate Hearing Record 2, ECF No. 24-1.) The disposal of his non-allowable property was not an additional sanction but rather flowed from his disciplinary segregation. This is so because MCI-H agrees to store only some of a prisoner's possessions while that prisoner is in disciplinary segregation, and the characterization of some of

---

[3] Queen does not argue that his due process rights were violated by this adjudication.

Queen's property as non-allowable for storage followed established, permissible prison procedure.  Further, as Queen readily admits, he accessed a meaningful hearing procedure through the grievance process following the disposal of his property.

Finally, it is not clear that Queen suffered a cognizable property deprivation.  Due process generally requires that a state actor not deprive someone of a cognizable property interest without first providing notice and an opportunity to be heard, before the deprivation occurs, if practicable.  *See Parratt v. Taylor*, 451 U.S. 527, 541 (1981).  That rule, however, presupposes that a deprivation has taken place.  The Tenth Circuit has flatly held that a prisoner is not "deprived" of property when he is given the option of sending it "to a place of his choosing," reasoning that "[w]hile an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison." *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).  Similarly, the Seventh Circuit has questioned whether a prisoner "allege[d] an actual deprivation of his property" when the prison sent several books he had ordered to a member of his family rather than allowing him to possess them in prison.  *Munson v. Gaetz*, 673 F.3d 630, 638 (7th Cir. 2012).  *See also Pryor-El v. Kelly*, 892 F. Supp. 261, 271 (D.D.C. 1995) ("Where an inmate's personal property is seized and sent to an address of his choosing, such action is not a deprivation.").  MCI-H gave Queen the option of sending those items of his property deemed non-allowable to the address of his choosing.  In so doing, MCI-H interfered only with his right to possess that property within the prison, not with his actual ownership of it.  It is therefore not

clear Queen suffered a cognizable deprivation within the meaning of the Due Process Clause of the Fourteenth Amendment.[4]

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss or for summary judgment, treated as a motion for summary judgment, will be granted. A separate order follows.

June 29, 2015  /S/
Date  Catherine C. Blake
 United States District Judge

---

[4] To the extent Queen asserts a claim based on Officer Jenkins's alleged loss of Queen's radio, that claim fails because the deprivation did not occur as a result of established state procedure, and Queen had access to meaningful post-deprivation remedies through Maryland's Tort Claims Act and the IGO. *See Parratt*, 451 U.S. at 540-44.